DIANA GRIBBON MOTZ, Circuit Judge,
dissenting:
With respect, I dissent.
In United States v. Morin, 80 F.3d 124 (4th Cir.1996), this court unanimously held that “national of the United States” as defined by 8 U.S.C.A. § 1101(a)(22)(B) (West 2005) includes naturalization applicants. The majority acknowledges this, as it must. See ante at 341-42. Thus, the majority recognizes, albeit implicitly, that Morin constitutes binding circuit precedent. It refuses to follow this precedent because it believes that we must apply Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) deference to the BIA’s contrary interpretation of § 1101(a)(22). I cannot agree and so must dissent. Given our recent precedent, we must interpret § 1101(a)(22) without applying Chevron deference to the agency’s interpretation. Therefore, we must conclude that applications for citizenship demonstrate permanent allegiance and that Luis Puentes Fernandez is a national under § 1101(a)(22). See Morin, 80 F.3d at 126. For this reason I would grant Fernandez’s petition for review.
In reaching its holding, the majority heavily relies on National Cable & Telecommunications Ass’n v. Brand X Internet Services, 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). But, Brand X only governs if “Chevron’s framework” applies, id. at 980, 125 S.Ct. 2688 — if the agency is “otherwise entitled to Chevron deference,” id. at 982, 125 S.Ct. 2688. Courts must accord an administrative agency Chevron deference only if Congress has delegated authority to the agency to clarify a statutory ambiguity. Bustamante-Barrera v. Gonzales, 447 F.3d 388, 393 (5th Cir.2000). Congress has not done so here, and until today no court has held that it has.
Although some of our sister circuits have disagreed with Morin’s interpretation of § 1101(a)(22), every court that has reached the question has held — either explicitly or implicitly — that courts owe no Chevron deference to the BIA’s interpretation of that statute. See Abou-Haidar v. Gonzales, 437 F.3d 206, 207-08 (1st Cir.2006); Marquez-Almanzar v. INS, 418 F.3d 210, 219 (2d Cir.2005); Sebastian-Soler v. U.S. Attorney Gen., 409 F.3d 1280, 1283 (11th Cir.2005) (per curiam); Alwan v. Ashcroft, 388 F.3d 507, 510 (5th Cir.2004); Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 967 (9th Cir.2003); see also Hughes v. Ashcroft, 255 F.3d 752, 755-58 (9th Cir.2001); cf. United States v. Jime *353 nez-Alcala, 353 F.3d 858, 861 (10th Cir.2003) (adopting Ninth Circuit view of the term “national” in a criminal case without discussion of Chevron). True, one circuit has declined to resolve that question, see Salim v. Ashcroft, 350 F.3d 307, 309 n. 2 (3d Cir.2003) (per curiam), and one has briefly questioned its earlier explicit holding, see Marquez-Marquez v. Gonzales, 455 F.3d 548, 554 n. 12 (5th Cir.2006). But before the majority’s ruling today, no court has ever held that Chevron deference applies to the BIA’s interpretation of “national” in § 1101(a)(22).
There is good reason for this unanimity. As our sister circuits have reasoned, “the BIA’s interpretation is not entitled to [Chevron] deference” because in the removal context Congress has placed “determination of nationality claims solely in the hands” of the courts. Perdomo-Padilla, 333 F.3d at 967; see also, Sebastian-Soler, 409 F.3d at 1283. The Immigration and Nationality Act explicitly directs that a “court shall decide the nationality claim.” 8 U.S.C.A. § 1252(b)(5)(A) (West 2005). This provision is followed by the limitation that “[t]he petitioner may have such nationality claim decided only as provided in this paragraph.” 8 U.S.C.A. § 1252(b)(5)(C) (West 2005); see also, Per-domo-Padilla, 333 F.3d at 967 (citing statute and holding that “Congress did not grant discretion to the BIA to decide questions of law related to nationality”); accord Alwan, 388 F.3d at 510; Hughes, 255 F.3d at 758.
The majority’s holding not only creates a conflict with at least four other circuits, it also conflicts with our own precedent. In Morin, we too implicitly concluded that the Chevron framework did not apply to determinations of nationality and so interpreted § 1101(a)(22) without considering the BIA’s views. Although Morin defined “national” in the criminal context, we most assuredly cannot interpret the same statute differently in different cases. See Perdomo-Padilla, 333 F.3d at 972 (refusing in removal case to distinguish Morin on basis of criminal context). Moreover, in Dragenice v. Gonzales, 470 F.3d 183, 187-89 (4th Cir.2006), we recently interpreted § 1101(a)(22)’s definition of “national” in the immigration context without affording Chevron deference or even considering BIA decisions.
I would follow our sister circuits and our own precedent in Morin and Dragenice and decline to apply Chevron deference here. I fear that the majority’s disagreement with Morin’s interpretation of § 1101(a)(22) has led it to defer to the BIA on nationality questions that Congress has entrusted to the judiciary.